WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>            Plaintiff,<br>v.<br>Ronnie Donnie Gant,<br>            Defendant. | CR 04-785-TUC-DCB (JM)<br><br>**ORDER** |

Having performed its *de novo* review of the Magistrate's Report and Recommendation (document 96), *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), this Court adopts the Report and Recommendation, and orders that Defendant Gant's Motion to Suppress Statements (document 77) and Motion to Suppress Stop (document 76) are denied.[1]

**I.    MOTION TO SUPPRESS STOP**

Defendant's Motion to Suppress Stop is denied.

Officer Winona May of the Tohono O'Odham Police Department, while on patrol duty on Route 15, observed Defendant's vehicle traveling by itself. (TR 9/13/2005 at 10,

---

[1] In his Objection to the Magistrate's Report and Recommendation, Defendant includes arguments regarding the legality of the search of his vehicle. (Objection at 5-7) No motion regarding the search of Defendant's vehicle was presented to the Magistrate and no such issue was addressed in the Report and Recommendation. Thus, Defendant's arguments regarding the search of his vehicle are outside of the scope of review authorized by 28 U.S.C. § 636, and will not be considered by this Court.

16-17) Officer May was positioned at a location where the speed limit changed from 55 mph to 35 mph. (*Id.* at 16) When Officer May first observed Defendant's vehicle, it was less than one quarter of a mile away from her position and within the 35 mph zone. (*Id.* at 16) Officer May testified that the distance from her position to the sign marking the 35 mph zone was also less than a quarter of a mile. (*Id.* at 43) According to Officer May's dash-mounted radar, Defendant's vehicle was traveling 51 miles per hour in the 35 mph zone. (*Id.*)

It is well established that evidence of a traffic violation creates sufficient reasonable suspicion to stop a vehicle. *See, United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000).

The evidence offered by Defendant to refute Officer May's testimony was not credible. First, co-Defendant Eleazar Leija testified that he spoke with Defendant Gant following their arrest. (*Id.* at 75) Leija's claim that he and Defendant Gant assiduously avoided any and all discussion about their arrest and the facts of this case simply strains credulity. (*Id.*)

Regardless, even if this Court were to find Leija's testimony to be credible, Leija's testimony only supports the testimony of Officer May. Leija testified that he and Defendant were approximately 50 feet from Officer May's vehicle when Leija was able to see the vehicle's police markings. (*Id.* at 83) According to Leija, only upon recognizing Officer May's vehicle as a law enforcement vehicle did he advise Defendant to slow down. (*Id.* at 83-4) Thus, based upon Leija's testimony, Defendant did not reduce his speed until he was approximately 50 feet away from Officer May's vehicle and, therefore, well within the 35 mph zone. Indeed, Leija later testified that Defendant was in fact driving at a speed greater than the posted speed limit of 35 mph. (*Id.* at 87)

Of course, on redirect examination, Leija changed his testimony to reflect that he identified Officer May's police vehicle from approximately a quarter of a mile away. (*Id.*

2

at 88) Leija also changed his testimony to reflect that Defendant had in fact reduced his speed before ever entering the 35 mph zone. (*Id.* at 88-9) Leija's inability to keep his story straight only further evidences the unreliability of his testimony.

There was also conflict between the testimonies of Leija and Defendant. For instance, according to Leija, Defendant's speed was always relative to the speed of the vehicles allegedly traveling in front of Defendant. Thus, when the other vehicles slowed down, so did Defendant. (*Id.* at 69, 88-9) As such, Leija testified that upon reaching the 35 mph zone, the vehicles in front of Defendant and, therefore, Defendant himself, all reduced their speed to the posted limit. (*Id.* at 88-9) When Defendant testified, however, he claimed that only he slowed down and the vehicles in front of him all sped away. (*Id.* at 97)

Defendant's testimony, like Leija's, also lacked credibility on its own accord. For example, Defendant testified that he thought he was transporting aliens, when he was actually transporting marijuana. (TR 9/14/2005 at 11) Defendant, however, was driving a truck with an extended cab. (*Id.* at 34-5) The load of marijuana was in the rear section of the extended cab. (*Id.*) Therefore, Defendant was in an extremely small, enclosed space with several bales of marijuana.

Given the pungent smell of marijuana, barring some kind of neurological disorder impairing his sense of smell, it is extremely unlikely that Defendant failed to appreciate that there was marijuana in his vehicle. Even assuming that Defendant could not, for whatever reason, smell the bales of marijuana inside the cab of his truck, this Court does not believe that anyone could mistake inanimate bales of marijuana for living, breathing human beings. This is particularly true when the "bodies" are stashed in the rear of a truck's extended cab.

## II. MOTION TO SUPPRESS STATEMENTS

Defendant's Motion to Suppress Statements is denied.

Defendant was provided with his rights and signed a waiver thereof in the presence of two witnesses. (Exhibit 2) Defendant's claim that he signed the waiver without reading it does not render his waiver involuntary. "Coercive polic[e] activity is a 'necessary predicate' to finding a confession involuntary...." *United States v. Kelley*, 925 F.2d 562, 565 (9th Cir. 1992). There is nothing to indicate that Defendant was in any way coerced into signing the waiver of rights. In fact, it would appear that Defendant's decision not to read the waiver was itself completely voluntary.

Furthermore, Agent William Dreeland of Immigrations and Customs Enforcement testified that he read the Statement of Rights form to Defendant. (TR 9/14/2005 at 48) Agent Dreeland also asked Defendant if he understood his rights and if he had any questions. (*Id.*) Only then did Agent Dreeland ask Defendant to sign the waiver of his rights. In fact, the Statement of Rights form clearly indicates that Agent Dreeland read Defendant his rights two minutes before Defendant signed the waiver. (Exhibit 2)

Defendant's testimony to the contrary lacks credibility, for the reasons set forth above.

**Accordingly,**

**IT IS ORDERED** that Defendant Gant's Motion to Suppress Statements (document 77) and Motion to Suppress Stop (document 76) are denied.

**DATED this 25th day of October, 2005.**

David C. Bury
United States District Judge

4